Good morning. Welcome to the United States Court of Appeals for the Sixth Circuit. We have, I think, three arguments this morning. Please call the first case. If you've reasoned... Your Honors, I have the privilege of introducing one of our students from the University of Michigan Federal Appellate Litigation Clinic, Surjit Kundu, who's going to argue on behalf of our client, Charles Adams. I thank you for allowing this permission. Our pleasure. You may proceed. If you've reserved any time, let me know. I'll be sure to call upon you for a rebuttal. Your Honor, I'd like to reserve two minutes for rebuttal, please. You may. You may proceed. May it please the Court, my name is Surjit Kundu, and I'm here representing Petitioner Mr. Charles Edward Adams. Mr. Adams spoke out against police cooperation. For his words, he was punished not once but twice when the District Court mechanically applied a sentencing enhancement without any consideration of the First Amendment protections to which we are all entitled. For this reason, we ask that Your Honors remand this case for resentencing. When this First Amendment analysis is conducted, Mr. Adams' statements are properly characterized as protected speech. But then how could he be guilty? Your Honor, he pled guilty to the underlying conviction under 1513b2. However, he reserved the right to appeal his conviction, I'm sorry, his sentence, and that's exactly what we're doing here. This enhancement also punishes somebody for making threats with the intent to cause bodily injury, with the intent to obstruct justice. However, at no point did the Court consider whether or not these statements were properly considered true threats. Why did they need to? He admitted they were. While he admitted that they were threats for the purposes of the conviction, he has consistently objected to the application of this enhancement. He has admitted that they may have been threatening in nature. He has never admitted that they fit the requirements of the enhancement. With all due respect, I don't know that we really care whether he agrees or not. Do you agree with the underlying proposition that the Supreme Court has told us that a true threat is not protected by the First Amendment? Yes, Your Honor, I do. So the offense of conviction, at least as I understand it, so tell me if I'm going wrong here, requires him to have made what in the First Amendment context we would call a true threat. Yes, Your Honor. So once having admitted, for purposes of pleading guilty, that he's made a true threat, why on earth would we let him go back now and essentially recant that for purposes of an enhancement? Your Honor, if we can automatically apply this enhancement on top of this conviction, as the government is advocating that we can, we run into the problem of double counting. This Court has stated in United States v. Pharaoh that identical conduct cannot be punished in two separate ways, in this mechanical manner. But it can if Congress or the Sentencing Commission intends it. Yes, Your Honor. However, this enhancement is intended, when applied to this conviction, to account for situations where there are multiple pieces of conduct.  But, okay, so this particular offense could be committed in different ways. You could go and key somebody's car. Somebody testifies against you, you leave court, you take your key, and you run a big line down the side of their car. Yes, Your Honor. That would count. That would violate the statute, wouldn't it? Yes, Your Honor, it would. Okay, but in sentencing that person, or the person who makes a threat of physical injury or causes physical injury, it's not double counting to treat them differently, right? If, Your Honor, there is separate conduct, so the act of keying the car, and then if the person makes a threat on top of that, we're dealing with two pieces of conduct, the actual physical damage itself and then the additional threat. No, I'm saying there's no threat on top of it. The person does it, believing that the person who's testifying will get the message. That is the conduct. In that case, Your Honor, if the enhancement was applied as automatically as it was in this case. No, I'm saying it's not double counting. I'm asking you, is it double counting if you look at the facts of the case and those facts distinguish the way the crime was committed from other ways the crime could be committed? So that when you look at the Sentencing Commission's intent or Congress's intent, there's a reason for enhancing the penalty when the crime, the same crime, is committed one way as opposed to another way. Does that violate the rule against double counting? If there is only one set of conduct as in your hypothetical, the keying of the car, then I believe it would violate double counting. Here, we're dealing with a situation where there is nothing distinguishing the statements that were counted for the purposes of conviction and the statements that were considered for the purposes of this enhancement. Adding this First Amendment analysis. Well, that's a conclusion, so let's look at that for just a second and tell me where this analysis goes wrong. It at least looks as if the crime here is for threats to retaliate. The enhancement addresses threats to obstruct justice. So you can retaliate in a way that would not obstruct justice. So he might have... We're talking about these Facebook postings, but they do seem to be... The conduct is the same if you define it as posting something on Facebook, but the conduct is different if you look at what the precise threats were. One's to retaliate. One is to obstruct justice. So that doesn't constitute double counting. What's the matter with that analysis? Your Honor, there is a rhetorical difference between the underlying conviction with the intent to retaliate and the enhancement intent to obstruct, but there's no practical difference between the two. It's nearly impossible to... What do you mean when you say there's a rhetorical difference? It's not usually the way we look at things. You might be right, but... Yes, Your Honor. In a manner when you conduct yourself in a way that intends to retaliate against a confidential informant, there is nothing that distinguishes that from intending to obstruct justice. The act of retaliating against the confidential informant in and of itself is an obstruction of justice. I'm not sure that's what was being asked, but... Why does retaliation always constitute obstruction of justice? The retaliation against the confidential informant always constitutes an obstruction of justice because the confidential informant is there to facilitate the proceedings of justice. Well, let's assume that the retaliation occurred after the proceedings are absolutely finally complete. All the appeals are done. Are you obstructing justice at that point if you retaliate for something that somebody did against you a couple of years ago in a case? Perhaps not, but that is not the case that we have here. But we're not talking about... You want to talk about what happened here and we ask you about theory. When we ask you about theory, then you want to talk about what happened here. So they're not... They might be the same, but they're not always the same. Would you at least concede that? They're not always the same. All right, so then your response is, in this particular case, this conduct was the same. It was both retaliation and retaliation in order to obstruct justice. Is that your argument? Indeed, Your Honor. All right. Thank you. Because this conduct in this particular case was identical for the conviction and the enhancement, the district court erred in not considering the First Amendment analysis, adding an extra additional step to separate the underlying conviction and the enhancement. When this... What standard do you advocate we should be measuring this question by? For the First Amendment question, Your Honor, whether or not these statements are protected, because this is a constitutional question, this should be reviewed de novo. Did he object at the time of sentencing? He did not make... He did not utter the words of First Amendment objection. So if he didn't object, then we look at things for plain error, right? Yes. As to the question of whether there was a procedural error, that should be reviewed under a plain error standard. So we're... Let's assume there's error. I'm not sure that the error is clear, but why is this resulting in some sort of miscarriage of justice under the plain error standard? This enhancement added 8 levels to Mr. Adams' base offense. This addition of 8 levels increased his sentence by a material amount. Without the enhancement, he would have been at a base level of 11. This would have led to a sentence of somewhere between the 27- to 33-month range. With the enhancement added, he was eligible for a offense... I'm sorry, a sentence with a base offense level of 19, which was a 63- to 78-month-long sentence. But you can't possibly trigger plain error just because you get a longer sentence. That wouldn't apply in every case. No, Your Honor. However, because this error implicates a constitutional right, and we have the precedent in cases such as the United States v. Tomlin... How does it implicate a constitutional right? We're right back where we started. If he's admitted that his conduct constituted a true threat, there is no constitutional violation, period. There is no constitutional violation at the conviction stage. For the enhancement stage, the question as to whether or not his statements were threatening remained unresolved in the pre-sentencing report. On page 21, the probation officer noted that the objection to the application of this enhancement remained unresolved, and the two parties argued back and forth as to whether a reasonable person should have viewed these statements as threatening in nature. So by ignoring this question altogether, by not resolving this objection, by conducting a rigorous First Amendment analysis, the district court committed this kind of a plain error. What did the judge say? What was the judge's actual finding? The judge accepted the government's argument. I believe the words were, Quite frankly, Your Honor, it doesn't get more threatening than this. The judge accepted that statement. That was the extent to which the First Amendment was considered. This brief of a consideration of the First Amendment cannot suffice to be the kind of rigorous contextual analysis that is required before classifying speech as truly threatening. Why on earth do you need a more rigorous analysis just to the one phrase, kill his ass? Because, Your Honor, the Supreme Court has repeatedly stated that context can transform speech. The phrase kill his... The context here is posting a CI's face on the Internet and then posting threats that suggest that either he or somebody else, either he's going to kill him or somebody else should kill him on his behalf. How on earth can you get more threatening than that? Your Honor, we can look to other cases where very threatening speech has been held to be protected when viewed in their full picture. For example, in United States v. Watts, the Speaker uttered that Lyndon B. Johnson, the President, would be the first person in the crosshairs of his rifle. That is speech that is just as threatening, if not more. Do you have to rely on the First Amendment? I mean, the problem I'm having is that to be relying on the First Amendment, you have to say that this speech is protected. And as Judge McKeek has said, it's not protected if it's a real threat. I mean, either he was guilty or he wasn't. He very well might have won this case by going to the jury and saying, look, I mean, you know, these are unfortunate words, but this wasn't a credible threat. This is street talk. This man never thought that anybody should really go out and kill the guy, but he didn't. So he admitted that it was a threat. I mean, he admitted the elements of the offense, okay, without putting forth that defense. And maybe you can even satisfy the elements of the offense, but it would be unconstitutional to punish that speech because of the type of speech it is, because there's no intent. So do you... It seems to me that one could make an argument that, okay, you can have the facial elements of the offense, but when you're talking about the conduct is posting it, these words, the words threaten bodily injury, and it was retaliating because of the information, but that one has to engage in a different inquiry in deciding whether the... I'm sorry, I'm looking for the exact words. Threatening to cause physical injury, that there's something different that's intended there that you really are looking to whether the person intended that the person believed that there was a chance of being injured or something. And I'm not sure that's a winning argument, but to me that's a very different argument than saying that whatever he said, no matter what the threat, no matter the implication, the interpretation is protected speech. That was a long-winded way of saying that, but do you... Why do you have to rely on the First Amendment to make this argument? Your Honor, there are two... I'm sorry, I see that my time is up. May I answer? Please answer. There are two elements to this enhancement, the threat aspect, which is the First Amendment analysis, and the intent aspect. We have chosen to proceed on the First Amendment threat aspect analysis because there is still an open question as to whether objective or subjective intent should be considered. That is why, in our last brief, we ask that Your Honors consider staying this case until a United States v. Alonis is decided by the Supreme Court, which would resolve the question as to intent. Thank you. Thank you. All right, you'll have your rebuttal time. Mr. Parker. Good morning, and may it please the Court. My name is Robert Parker for the United States. I do want to make it very clear at the outset. We do understand the distinction the defendant is trying to make in saying that the First Amendment forbade this particular enhancement without affecting the plea or the finding of acceptance of responsibility. We just don't think that that is a meaningful distinction based on the claim that the defendant is raising for precisely the reasons, Judge McKeegan, Judge White, that you were saying. There's no way that the district court could have made the findings that the defendant now wants the court to have made. Why? Why wasn't it open? Not that the district court was compelled to make the finding, but why couldn't the district court look at the situation separate and apart from the conviction he admitted that he posted something that had a threat? Does that necessarily mean that he threatened physical injury? I mean, was the judge compelled to? If the judge believed that, yeah, his words may have caused someone to do something because that's the world we live in, even though he didn't intend it that way, was the judge obliged to impose this enhancement? I think the answer is yes, and the reason is the plea was not simply to making a statement that contained a threat. He pleaded guilty to, and this is within the language of the statute, he pleaded guilty to threatening to cause bodily injury to the confidential informant, that he knew he was threatening to cause bodily injury, and that he did so with the specific intent to retaliate against the confidential informant for having given information that led to the arrest of Adams' friend. And so that is a very different circumstance from simply saying, well, there was a communication here, and I find that it ended up containing a threat. His problem is that he admitted to subjective intent to threaten. Correct. You can't retract that now. I think that's right. So you have to construct an argument that you have one set of constitutional protections for the underlying conviction. You've got another set of First Amendment protections for an enhancement, but the bottom line is how can you have a separate set of First Amendment protections for an enhancement for speech that doesn't get constitutional protection to start with? I think that's exactly right. Isn't that the bottom line here? I think that is the bottom line. I would also note very briefly he, at another stage of sentencing, when the court was considering whether to grant an acceptance of responsibility credit, he expressly disclaimed any reliance on a constitutional claim. He had filed a pro se letter with the court at one point in which he said something to the effect of, I was just exercising my rights to free speech. And he then came into court, his attorney came into court, and expressly withdrew that letter because it was inconsistent with acceptance of responsibility. And he got three points, the maximum credit as a result. So it seems like what he's really saying is not just that there's some distinction between sentencing and the plea. What he's saying is there's some distinction between sentencing enhancements that hurt him and everything else, and we simply don't think that that's a correct distinction. I'd also just like to make a very brief point about plain error. The arguments that the defendant – the defendant is right that he challenged this enhancement, but the arguments that he made in the district court had nothing to do with constitutional protection. He argued that the way the enhancement is phrased, it requires the defendant to actually have threatened to cause the harm personally. Now, the district court rejected that. The probation office also rejected it. And the reason was these statements certainly could be read to threaten personal harm, and in any event, that isn't necessarily what the guidelines are meant to prohibit. So I think that that argument, although a colorable argument, was incorrect, and he hasn't raised it here. So that was the nature of his challenge in the district court. Turning to the double counting issue for a moment, that issue was raised for the first time in the reply brief, and so I think the court could consider it waived. But even if the court considers it, it's incorrect. This court's cases have repeatedly held that the only circumstance in which double counting occurs between the application of a base offense level and an enhancement is if the only conduct that qualifies for the base offense level also qualifies for the enhancement, on the theory that if that were what the sentencing commission intended, they would simply have made the base offense level higher. That's not the case here. The base offense level here applies to all forms of obstruction of justice. It applies equally to the defendant who shredded documents and the defendant who murdered a witness. And then there are enhancements when you commit particular aggravated offenses, as Mr. Adams did. Most of the guidelines, in fact, have provisions precisely like this. The robbery guideline in Section 2B.3.1 applies to all forms of robbery. The person who keys the car commits the offense but doesn't get the enhancement. Well, I actually think that's incorrect. Just in the interest of full disclosure, the enhancement says that it applies to threats to cause physical injury or property damage, and so I think that the enhancement would apply in that circumstance. This enhancement is intended to get the defendants who commit aggravated offenses like a violation of Section 15.13, and it's intended to distinguish them from other obstructors of justice who may just shred documents or lie to an investigator or something like that. As I was saying, the robbery guideline, for example, has an enhancement for robbing a financial institution, but it's certainly not the case that if you're convicted of bank robbery under Section 21.13 of the Code, you don't get the enhancement because the elements of your offense necessarily include a financial institution. The same argument would apply to every drug case, wouldn't it? I think that's right. You're convicted of possessing or intent to distribute drugs, and then you're enhanced by the amount of the drugs, but it's the same as saying you got convicted because of drugs, so you can't enhance because of drugs. Of course you can. I think that's right. The final point I'd like to make regards the request to hold this case for Alanis. We don't think there is any need to hold the case for Alanis. The question presented in Alanis, as I think my colleague alluded, is whether the Constitution or the statute at issue in that case, which is Section 875 of the Interstate Threat Statute, whether those provisions require a subjective intent to threaten. Even if the court answers those questions in the affirmative, it would not affect this case for two reasons. First, Judge McKeague, as you pointed out, he had a subjective intent to threaten because he admitted in his plea agreement that he knew that what he said was a threat and that it was a threat to commit bodily injury, and that he made it with the specific intent to retaliate against the informant. There is nothing in his plea that would support the inference that this was, in fact, a joke or hyperbole or something of the sort. Moreover, when you look at the elements of the two statutes, Section 875, which is at issue in Alanis, and Section 1513 here, they could not be more different. Section 875, the only thing that must intentionally be done there, is to transmit a communication. And as long as it's later found to contain a threat, you are guilty. Here, you have to knowingly make a threat with the intent to retaliate, and we can't think of any circumstance in which a defendant would satisfy those elements and not have a subjective intent to threaten. So for those reasons, I don't think there's any reason to hold for Alanis. Just out of curiosity, would this be a crime, in your view, if you had this, was this Facebook, or I don't know, you had this online dialogue and there was no picture, and the person wasn't identified? I think it would depend on context, and I think that context is very important in every threat case. You could imagine a circumstance, for example, where a defendant posts something that says, this person was arrested, I'll bet there was a snitch. I don't know who that is, but whoever it is, I hope he dies. I don't think that that would constitute a violation of Section 1513. Well, it's not enough to say, I hope he dies. Or, you know, I'm going to kill him. If I find out who he is, I'm going to kill him. Yes, yes. There, the informant's anonymity is still intact. There would be some question as to whether there was actually fear of real harm there. If, however, the individual said, let's say that the informant was acquainted with the individual who was making the statement, and said, hmm, wonder who the informant is, you know who you are and I'm going to kill you. That, I think, would be a threat, even though he did not specifically identify the informant. So context matters. Does the informant have to have knowledge of the threat? The informant does not necessarily have to know of the threat. Here, he certainly did. But I think the question is whether it is calculated to place a person reasonably in fear of death or injury. And what about the people that signed on? You know, you're in a chat room. Somebody apparently has personal knowledge of what's going on and says, you know, this is just outrageous, and the guy should be killed. And then people are chiming in, going, yeah, snitches should be killed, and, you know, shoot the guy, and you've got ten people who are just feeding on each other. Have they all committed the offense? I think, strictly from an elements standpoint, yes. I think the question then is, do you prosecute all of them? They were not all prosecuted in this case. The reason they weren't prosecuted is, unlike Mr. Adams, most of these were just one-off statements. Now, maybe those are threats within the meaning of the statute, but the decision was made to prosecute Mr. Adams because he made the comments repeatedly. He was by far the most prolific. He did so over the course of several days. This was not just a momentary outburst. He knew one of the arrestees and was personally acquainted with the case. He was in the community. It was not, as you probably know on Facebook, anybody who may see the post can comment. You can be in Tokyo and comment. He was right there. And he had a violent criminal history that was well known to people in the community. His criminal history is extremely violent and includes firearms offenses. In fact, he was on supervised release at that very moment for having possessed a gun as a convicted felon. So those are the reasons why Mr. Adams was prosecuted. Unless there are any other questions, we'd ask the clerk to refer. Thank you. Ms. Condu. May I proceed? I would like to begin my rebuttal by addressing a point made by opposing counsel that Mr. Adams was prosecuted because he had posted multiple times, whereas others had not. That is not indicated in the record. We have no idea how many times other people were posting. In fact, the record does indicate at least one other individual, Aisha Gentry, who posted at least twice. Before you spend a lot of time on this, don't forget selective prosecution is not an issue in this case. It is, Your Honor. However, the fact that other people did not comment multiple times does not distinguish Mr. Adams' speech. The fact remains that there are still four very relevant contextual factors that place his statements in a protected sphere. First and foremost, they were posted on Facebook, Facebook being a platform for a virtual rally against police cooperation that Mr. Adams was participated in. This rally was started by another individual who posted the original screenshot of a newscast identifying the particular confidential informant, among other aspects of the drug ring prosecution, that this was all in response to. This was public discourse around the issue of police non-cooperation, a political issue very relevant to Mr. Adams' community. Additionally, Mr. Adams has publicly declared his affiliation with the world of rap music, where this kind of rhetoric is very common. It is stylized. It is hyperbolic. It is not a true threat. Lastly, Mr. Adams does nothing to indicate that he is, in fact, the type of credible threat maker that the speakers were in Jeffries or Alonis or other cases in which we have found true threats posted on social media. Lastly, Alonis is very applicable to this case. While Alonis does address a different underlying conviction, the question of whether or not a speaker must have subjective intent to make a threat is the same question that is relevant here. It is an issue that the trial court attorney did raise at that level. May I wrap up this statement? Thank you. And because Alonis raises the same questions of the relevance of social media and rap speech, we ask that your honors consider staying this case in the alternative of deciding and remanding it today. Thank you. All right. Thank you. The case will be submitted. We appreciate the efforts of the University of Michigan Clinic and Mr. Torres here. You did an excellent job on behalf of your client. Thank you.